**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MIENIE ROBERTS** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **V.** | § | **Case No._____________** |
| | § | |
| **TEXAS A&M UNIVERSITY–** | § | |
| **CENTRAL TEXAS, DR. ALLEN** | § | |
| **REDMON, DR. LAURA** | § | |
| **WEISER-ERLANDSON, AND** | § | |
| **CLIFTON W. JONES** | § | |
| ***Defendants.*** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Mienie Roberts, by and through her undersigned attorneys, complains of Defendants, Texas A&M University–Central Texas ("TAMUCT" or the "University"), Dr. Allen Redmon, Dr. Laura Anne Weiser-Erlandson, and Clifton W. Jones as follows:

## I. INTRODUCTION

1. Plaintiff Dr. Mienie Roberts is a tenured mathematics professor at TAMUCT. Her work includes leadership of the University's undergraduate mathematics programs, teaching, scholarship, student-success activities, and institutional service. The University approved her promotion to Professor effective September 1, 2026.

2. Roberts contends and claims that the University subjected her to sex-based disparate treatment and retaliation through unequal workloads and evaluation standards, displacement from grant responsibilities, and restrictions on employment-related opportunities. Her grant work involved a twenty-percent effort commitment as TAMUCT's Co-Principal Investigator on a federal HSI STEM award administered in collaboration with Temple College. Although she retained that title for a period, her functions and communications were progressively transferred

to others. Her appointment ultimately ended May 31, 2026, without an extension through the grant's later end date.

3. Roberts challenged the University's evaluation of her work and pursued institutional complaints alleging sex discrimination and retaliation. She also filed EEOC Charge No. 450-2026-00669 against TAMUCT, alleging sex discrimination and retaliation, and received the EEOC Determination and Notice of Rights on July 22, 2026. During the University's internal review process, the University changed her scholarship rating, withdrew a recommended improvement plan, and agreed to remove challenged teaching language.

4. Roberts seeks redress for the discriminatory and retaliatory employment treatment alleged below, including resulting compensation losses and any continuing injury to her employment and personnel record.

## II. PARTIES

5. Plaintiff Mienie Roberts is a woman and a resident of Bell County, Texas. She is employed by TAMUCT as a tenured mathematics professor.

6. Defendant Texas A&M University Central Texas is a public university in Texas. Its address is 1001 Leadership Place, Killeen, Texas 76549. At all relevant times, the University employed Plaintiff and exercised control over the terms, conditions, privileges, evaluation, and administration of her employment.

7. Defendant Allen H. Redmon served as Dean of the College of Arts and Sciences during the challenged events attributed to him. He exercised authority over Roberts's working conditions, evaluations, and grant participation. He is sued in his individual capacity under Count III only.

8. Defendant Laura Weiser-Erlandson served as Chair of Roberts's department and exercised supervisory and evaluation authority over her. She is sued in her individual capacity under Count III only.

9. Defendant Clifton W. Jones was, at all relevant times, Associate Vice President for Enrollment Management and Student Affairs at TAMUCT. He is sued in his individual capacity under Count III only.

## III. JURISDICTION AND VENUE

10. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over the civil-rights claims under 28 U.S.C. § 1343. Roberts asserts Title VII claims against the University and an individual-capacity equal-protection claim under 42 U.S.C. § 1983 against the individual defendants.

11. The challenged acts attributed to the individual defendants occurred in Texas in connection with their work for a Texas public university.

12. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in Texas, including at TAMUCT in Killeen within this District. Venue for the related constitutional claims is proper under 28 U.S.C. § 1391 because a substantial part of the events occurred in this District. The University and the relevant Killeen events are within the Waco Division.

## IV. ADMINISTRATIVE PROCEEDINGS

13. On July 21, 2026, Roberts filed EEOC Charge No. 450-2026-00669 against Texas A&M University–Central Texas, alleging sex discrimination and retaliation under Title VII. The charge identified a continuing action and listed January 1, 2021 as the earliest date and July 10, 2026 as the latest date of discrimination. The EEOC recorded receipt of the charge on July 21, 2026, and

issued a Notification and Acknowledgement of Dual-Filed Charge on July 22, 2026, identifying the Texas Workforce Commission Civil Rights Division as the deferring state agency.

14. The charge expressly challenged Roberts's February 13, 2026 evaluation following her January 30, 2026 civil-rights complaint against the evaluator, Dr. Erlandson. It described the threatened failing teaching rating concerning third-party instructional videos; the "Needs Improvement" scholarship rating and treatment of her federal grant as service while a male colleague's grants counted as scholarship; the recommended improvement plan; and more favorable treatment of a male professor of the same rank and department evaluated by the same Chair who used another instructor's complete course materials.

15. The charge also alleged unequal workloads, including a male colleague's forty-percent teaching reduction, Redmon's recorded July 22, 2024 commitment to obtain a visiting professor to offset Roberts's absorbed workload, and his April 30, 2026 evaluation comments denying that commitment. It identified other female faculty members' complaints about Redmon's treatment of women.

16. Concerning the HSI-STEM grant, the charge described Roberts's September 2024 report to the Department of Education; Redmon's December 6, 2024 request that she step down; his December 9, 2024 offer of $10,000 to leave the grant; his February 3, 2025 statements concerning her Department of Education report; and reassignment of her designated duties to Redmon. It expressly challenged the April 22, 2026 communication of MOU nonrenewal and the May 31, 2026 end of her Co-PI appointment before the grant's September 30, 2026 end date. It connected nonrenewal to her March 21–22, 2026 sex-discrimination grievance, described her May 7, 2026 civil-rights intake, and alleged money damages in lost stipends. It further described Clifton W.

Jones's interference with Co-PI functions beginning in 2022, including control of hiring for a grant-funded position she was designated to supervise.

17. On July 22, 2026, the EEOC dismissed the charge and issued its Determination and Notice of Rights, declining further investigation without determining whether further investigation would establish a statutory violation. Roberts has exhausted the administrative charge process for the Title VII sex-discrimination and retaliation claims against TAMUCT arising from the practices expressly described in the charge and those within the investigation reasonably expected to grow out of those allegations.

18. Although the charge did not separately identify the three-year publication criterion as a distinct challenged practice, it expressly described the February 13, 2026 "Needs Improvement" scholarship rating, the reclassification of Roberts's active federal grant as service while a male colleague's grants counted as scholarship, the recommended improvement plan, and the threatened failing teaching rating concerning third-party videos. These allegations concerned Dr. Erlandson's evaluation of Roberts and Redmon's participation in the evaluation process, including his April 30, 2026 comments. The challenged application of publication and instructional-material standards concerns that same evaluation process and falls within the investigation reasonably expected from those allegations because evaluating whether the stated deficiencies were discriminatory or retaliatory would require examining the criteria used, their application to comparable male faculty, the evaluators' explanations, and the response to Roberts's January and March 2026 complaints.

19. The charge expressly alleged that Roberts's federally designated duties were reassigned to Redmon and that Jones interfered with her Co-PI functions, including hiring authority. The complaint's more specific allegations concerning restrictions on direct grant communications, exclusion from financial decisions, and loss of substantive Co-PI authority elaborate the same

grant-role displacement described in the charge. An investigation reasonably expected from those allegations would examine which duties Roberts held, who assumed them, who directed the changes, and the reasons for the changes during the period culminating in nonrenewal communicated April 22, 2026 and appointment expiration May 31, 2026.

## V. FACTUAL ALLEGATIONS

### A. <u>Grant appointment and displacement of responsibilities</u>

20. From 2022 through May 31, 2026, Roberts served as Co-Principal Investigator at a twenty-percent effort commitment on U.S. Department of Education HSI STEM Award P031C210167, a $3.6 million award to Temple College on which TAMUCT was the subrecipient.

21. Under the governing memorandum of understanding, Roberts was TAMUCT's designated representative and primary contact with Temple College for responsibilities including articulation agreements, transfer-student tracking, and information needed for reporting and data analysis.

22. Article I, section 1.2 of the MOU provided compensation of $24,000 per year for Roberts's services. Those services included increasing articulation agreements and STEM transfer and success, working with grant leadership and the external evaluator to track transfer students, and acting as the primary point of contact between Temple College and TAMUCT. The institutions also shared responsibility for providing grant-specific information for reporting and data analysis.

23. Redmon recognized Roberts's successful grant work. In August 2023, he described it as one of the grant's most successful parts, and in October 2024 he told her, "You are the best."

24. In April 2023, Roberts's qualifications to lead Artificial Intelligence and Data Science STEM camps were questioned based on concerns raised by Defendant Clifton W. Jones. Roberts held a Ph.D. in Mathematics and had machine-learning expertise. Redmon affirmed her qualifications to Temple College.

25. Beginning in 2022, Clifton W. Jones intervened in hiring for a grant-funded position Roberts was designated to supervise, although Roberts alleges that Human Resources confirmed he had no appointed grant role. Roberts alleges that Jones and another male administrator advanced a non-STEM candidate without consulting her and that, in June 2022, administrators acting at his direction attributed hiring delays to her in a written communication to the grant partner. Roberts further alleges that Jones questioned her qualifications to lead AI/STEM programming during 2023 despite her mathematics doctorate and machine-learning expertise. His interventions displaced her participation in grant hiring and required her to defend her professional qualifications.

26. Beginning in 2023 Roberts raised concerns orally and in writing about grant administration and civil-rights compliance in grant-funded activities. She wrote to Department of Education HSI Division Director Dr. Stacey Slijepcevic on March 31, 2023. On September 3, 2024 she reported concerns about Temple College project director Dr. Eva Munguia, describing her conduct as "unprofessional, retaliatory, and toxic."

27. On September 10, 2024, Roberts met online with Slijepcevic and Program Specialist Robin Dabney concerning turnover, delayed fund releases, procurement, false accusations against team members, and retaliation.

28. On September 11, 2024, Weiser-Erlandson informed Roberts that she had been unable to secure an external reviewer for Roberts's promotion package. Roberts's promotion was delayed by one academic year.

29. On December 6, 2024, by telephone, and again on December 9, 2024, in a recorded conversation, Redmon told Roberts that Munguia had asked her to step down as Co-Principal Investigator. In the December 9 conversation, Redmon offered Roberts "$10,000 to do something else without having to deal with [Dr. Munguia] at all" and stated, "I know that talking to the

Department of Ed created problems that we can't fix. We cannot overcome them." Roberts declined to step down and requested written reasons; none were provided.

30. By the February 3, 2025 meeting, Redmon knew that Roberts had reported concerns to the Department of Education. During that meeting, he referred expressly to her contact with the Department, stated that it had caused a problem, and characterized it as a mistake. At the same meeting, he directed that he and the Student Success Specialist serve as TAMUCT's liaisons to Temple College and restricted Roberts's direct communication with grant leadership. Roberts alleges that this decision displaced her from the primary-contact functions assigned by her MOU.

31. On February 3, 2025, Redmon further restricted Roberts's participation in the grant. He explained that the September Department of Education conversation had placed Temple College under greater scrutiny and changed TAMUCT's relationship with it. He stated, "I'm making the choice that we limit the amount of interaction that y'all have," and characterized Roberts's Department of Education report as a "mistake."

32. Redmon routed grant communications through himself and the Student Success Specialist and assumed grant financial decisions within Roberts's Co-PI responsibilities. Those matters included a faculty-stipend revision negotiated with Temple College on January 29 and February 6, 2025, on which Roberts was not copied. Roberts alleges that these restrictions left her with the title but deprived her of substantive functions, direct institutional contact, and participation in grant decisions.

33. Roberts was excluded from Summer Bridge teaching opportunities in 2024 and 2025, after Roberts, the Co-PI on the grant, received outstanding feedback on the 2023 evaluation; Temple College faculty members were selected instead.

**B. <u>Workload and comparator treatment</u>**

34. Roberts contends that a male colleague in her department, Dr. Thron, received an approximately forty-percent reduction in his total position, including teaching and administrative duties, while she carried a full teaching load, every writing-intensive course in the program, twelve service assignments, and a twenty-percent grant commitment during the relevant period.

35. At a recorded July 22, 2024 meeting, Redmon committed to hire a visiting professor to offset workload Roberts had absorbed. No visiting professor was hired. In his signed April 30, 2026 comments, Redmon denied that promise; Roberts alleges that the recording contradicts that denial. Roberts also alleges that two other female faculty members told her they left TAMUCT because of Redmon's treatment of them as women, that both filed internal HR complaints, and that both are willing witnesses.

36. The differences in assigned work impaired the time and resources available for Roberts's scholarship and professional responsibilities.

37. Roberts identifies Dr. Christopher Thron as the male comparator concerning instructional materials. During the 2025 evaluation cycle, Thron was in the same department and was evaluated by the same Chair, Weiser-Erlandson, under the same evaluation criteria. Roberts alleges that Thron used another instructor's complete course materials but received neither a comparable warning nor comparable criticism, while her February 13, 2026 evaluation threatened a failing future teaching rating for reliance on third-party instructional videos despite her substantial production of self-authored lecture videos.

38. Roberts also identifies Dr. Taylor Harvey, a male professor in the same department reporting to the same Chair and Dean, as a comparator concerning grant scholarship. Harvey confirmed in writing that his grants had been included in his scholarly activities at an equivalent or greater weight than a publication. Roberts alleges that her active federal grant, by contrast, was

treated as service in the initial evaluation and that the different treatment contributed to her "Needs Improvement" scholarship rating and improvement-plan recommendation.

39. Roberts alleges that she had produced more than 1,455 hours of self-authored lecture video despite the criticism concerning third-party materials. She requested the underlying student complaints in writing, but they were not produced in response to that request. The only such complaint then known to her came from a male student whom she had reported to TAMUCT campus police in October 2024 for stalking and harassment and who remained enrolled in her Spring 2025 course over her objection.

**C. <u>Complaints of sex discrimination and the evaluation sequence</u>**

40. In late January 2026, Roberts reported sex discrimination and retaliation concerning Weiser-Erlandson's conduct to the Texas A&M University System Office of Ethics and Compliance and TAMUCT's HR/EEO office. Roberts thereafter pursued a March 2026 formal HR grievance challenging sex-based displacement from her designated Co-PI role and unequal supervisory and evaluation treatment. On May 7, 2026, she participated in a civil-rights intake opening formal complaints against Weiser-Erlandson, Redmon, and Clifton W. Jones.

41. On February 13, 2026, Weiser-Erlandson issued Roberts's annual evaluation for calendar year 2025. It rated scholarship "Needs Improvement," recommended an improvement plan, and warned that continued reliance on third-party instructional videos would result in a future "Does Not Meet Expectations" teaching rating. Roberts alleges that these standards were applied differently to comparable male faculty, as described in the comparator allegations below.

42. Roberts met with Weiser-Erlandson concerning her annual evaluation on February 11, 2026. On February 13, Weiser-Erlandson signed and issued Roberts's evaluation for 2025, rating scholarship "Needs Improvement" because she had not published peer-reviewed work in the

preceding three years and recommending a short-term improvement plan in consultation with the Dean.

43. Roberts contends that no departmental or University guideline imposed the three-year publication rule used against her. The same Chair's earlier evaluation, signed February 23, 2024, had recognized a peer-reviewed publication, the federal grant, and two conference presentations under scholarship.

44. The February 2026 teaching evaluation rated Roberts "Meets Expectations" while criticizing "excessive reliance on third-party instructional videos," directing correction, and warning that failure to correct it would result in "Does Not Meet Expectations" in the next review cycle. This conduct occurred despite ninety-three-percent positive student evaluations.

45. On February 13, 2026, Chief Academic Technology Officer Richard Schilke confirmed in writing that no TAMUCT or TAMUS guideline or expectation limited third-party instructional content, including external videos. Roberts requested documentation of the asserted publication and video requirements and alleges that no governing written standard was supplied.

46. On April 10, 2026, Redmon wrote that no one alleged violation of a written rule and that he was not opposed to changing the scholarship rating to "Meets." On April 24, in a meeting attended by Human Resources, he described the third-party-video issue as "the wrong debate."

47. Between April 27 and April 30, 2026, the evaluation was reissued with scholarship raised to "Meets Expectations," the improvement-plan recommendation withdrawn, and the threatened future failing teaching rating replaced with a direction to increase Regular and Substantive Interaction ("RSI"). Roberts does not allege that the initial "Needs Improvement" scholarship rating remained unchanged after that revision.

48. On September 17, 2026, Weiser-Erlandson confirmed that she had not authored the RSI language, that her third-party-video criticism rested on three student comments, and that RSI guidance was under development. Roberts distinguishes the Chair's own evaluation statements from language added during the appeal process.

49. On September 29, Acting Dean Jerry Jones agreed to strike the directions concerning increased RSI and high-impact practices. On October 2 he clarified his intention to omit all the language Roberts identified in item 1 of her response.

50. Roberts contends that the original adverse scholarship rating, recommended improvement plan, threatened future teaching rating, and unequal application of standards impaired her professional standing and personnel record. She seeks relief for proven past injury and only those continuing effects that remain after the University's corrections.

**D. <u>End of the Co-PI appointment</u>**

51. On April 14, 2026, Christina Gillespie, acting for the TAMUCT Dean's office, asked Temple College Project Director Eva Munguia for a second amendment extending Roberts's MOU through September 30, 2026. On April 21, Munguia replied that she had met with Temple College Provost Susan Guzman-Treviño that day and that the Provost had confirmed Temple College would make no further amendments. On April 22, Munguia stated that Roberts's MOU responsibilities had been fulfilled and that she would no longer be involved in the grant after May 31, 2026. Gillespie conveyed Temple College's position to Roberts that morning and explained that stipends would also end on May 31.

52. Roberts disputed that all Co-PI work was complete. In her April 27, 2026 response, she identified ongoing analysis, dissemination, findings preparation, reporting, and IRB-protocol

closeout responsibilities. On May 20, Temple College's Provost reiterated that the project narrative required nothing further from the Co-PI and that a second amendment would not issue.

53. On June 17, 2026, Gillespie told Roberts that she had included Weiser-Erlandson and Jerry Jones in the matter in April, Jones having been Dean when the contract was put in place. When Roberts asked whether Redmon had lacked knowledge, Gillespie replied, "Not until now," explaining that she had not included him in the emails. This account is distinct from Redmon's earlier personal participation in restrictions on Roberts's substantive grant functions.

54. Roberts contends that the non-extension ended her paid Co-PI opportunity before the grant itself ended and caused lost stipends. Roberts alleges that nonextension ended her compensated Co-PI appointment on May 31, 2026 and deprived her of $8,000 in stipends she would otherwise have received for continued service from June through September 2026 at the MOU's $24,000 annual rate. She contends that substantive Co-PI work remained during that period, including analysis, dissemination, reporting, and IRB closeout. Temple College disputed the need for further Co-PI work, as described above.

55. The April 22 nonrenewal communication followed her March sex-discrimination grievance. Roberts requested a written rationale but alleges none was provided in response. Her charge also places the May 31 appointment end after the May 7 civil-rights intake; the April 22 communication preceded that intake, so Roberts does not allege that the May 7 intake caused the April 22 decision. She contends that Redmon, a male administrator without her STEM appointment or HSI experience, had taken over her designated functions.

**E. <u>Injury and continuing employment</u>**

56. Roberts remains employed by TAMUCT and was promoted to Professor effective September 1, 2026. Her claims concern the discriminatory or retaliatory conditions and lost opportunities alleged herein.

57. Roberts contends and claims resulting losses of compensation, grant functions, teaching and advancement opportunities, and professional standing, together with non-economic injury to be established through evidence. She seeks no duplicate recovery for overlapping theories or categories of loss.

**Count I — Sex Discrimination Under Title VII Against TAMUCT Only**

58. Roberts incorporates paragraphs 1–57.

59. TAMUCT employed Roberts within the meaning of Title VII. Roberts is a woman and was qualified for her faculty position and grant appointment, as reflected in her tenure, appointment, work record, and subsequent promotion.

60. Roberts contends that TAMUCT treated her worse because of sex in the terms, conditions, and privileges of employment, including the workload and evaluation differences described above and the displacement of her grant functions.

61. The sex-based inference rests on the alleged differential treatment of male faculty concerning workloads, use of third-party teaching materials, and recognition of grant work as scholarship, together with the assumption of Roberts's grant functions by Redmon. Roberts does not rely solely on the absence of a written rule as proof of sex discrimination.

62. Roberts contends that the challenged treatment disadvantaged her work responsibilities, time available for scholarship, professional opportunities, personnel record, and compensation. Her sex was a motivating factor in the challenged practices, in violation of 42 U.S.C. § 2000e-2(a) and (m).

**Count II — Retaliation Under Title VII Against TAMUCT Only**

63. Roberts incorporates paragraphs 1–57.

64. Roberts opposed practices she reasonably and in good faith believed constituted sex discrimination through her institutional civil-rights complaint and formal Human Resources grievance described above.

65. Roberts contends that the University thereafter subjected her to materially adverse evaluation treatment, including the initial adverse scholarship rating, recommended improvement plan, and threat of a failing teaching rating. The pleaded sequence, alleged unequal treatment, and later revision of the stated grounds support her allegation of retaliation.

66. Roberts contends that these actions, considered in their employment context, could dissuade a reasonable employee from making or supporting a complaint of discrimination and would not have occurred but for her protected opposition.

67. Roberts does not allege that every report concerning funding, procurement, turnover, or institutional relations was protected activity under Title VII. Earlier grant restrictions are asserted as retaliation for Title VII-protected opposition only to the extent the underlying communications actually opposed unlawful employment discrimination and the responsible decision-makers knew that content.

68. The retaliatory practices alleged in this count violate 42 U.S.C. § 2000e-3(a).

**Count III —Sex Discrimination Against the Individual Defendants in Their Individual Capacities**

69. Roberts incorporates paragraphs 1–57 to the extent they describe each defendant's own conduct and the relevant factual context. This count seeks damages for intentional sex

discrimination, not an independent constitutional claim based merely on disagreement with grant administration or retaliation for reporting it.

70. The individual defendants acted under color of Texas law while exercising authority as officials of a public university. Roberts alleges violation of her Fourteenth Amendment right to be free from intentional sex discrimination in public employment.

71. Redmon personally restricted Roberts's direct grant communications and assumed substantive functions assigned to her as Co-PI, including participation in financial and operational decisions. Roberts alleges that he did not impose comparable interference on Taylor Harvey's grant administration under the same supervisory structure. She also alleges unequal workload treatment involving Christopher Thron and the withholding of promised faculty support. Roberts alleges that the comparative treatment, Redmon's assumption of her designated authority despite his lack of her STEM faculty appointment and HSI experience, and his contradictory account of the promised workload support support an inference that his treatment was intentionally sex-based. These allegations concern his personal decisions, not liability based solely on his title as Dean.

72. Weiser-Erlandson personally issued the February 13, 2026 evaluation and applied the challenged scholarship and instructional-material standards. Roberts alleges intentional sex discrimination based on the different treatment of her instructional practices and grant scholarship compared with Thron and Harvey, as described above. The challenged treatment placed an adverse scholarship rating, an improvement-plan recommendation, and a threatened future failing teaching rating in her evaluation record. Roberts seeks recovery for injury attributable to those actions, accounting for the University's later corrections. She does not attribute to Weiser-Erlandson RSI language added by another participant in the appeal process.

73. Clifton W. Jones personally intervened in the grant-funded hiring process and challenged Roberts's qualifications for AI/STEM programming, as described above. Roberts attributes the resulting interference with her hiring and grant functions to his own actions, not merely to his administrative position.

74. Roberts seeks recovery from each individual only for that individual's actionable conduct. She does not seek vicarious liability based solely on supervisory title.

## JURY DEMAND

75. Plaintiff demands a trial by jury on all issues so triable. 42 USCS § 1981a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants and award the following relief:

A. A declaration that Defendants' acts and practices violated Title VII and Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment;

B. A permanent injunction prohibiting the University and its officers, agents, employees, and persons acting in concert with them from continuing the unlawful employment practices alleged in this Complaint;

C. An order requiring the University to correct Plaintiff's personnel and evaluation records by removing evaluation language based on unwritten or improperly applied standards;

D. An order restoring Plaintiff, to the extent practicable, to the employment position, professional opportunities, compensation, and benefits she would have held absent Defendants' unlawful conduct;

E. Back pay, lost stipends, lost benefits, front pay, and other equitable monetary relief;

F. Compensatory damages for Plaintiff's economic and non-economic injuries. 42 USCS § 1981a.

G. Punitive damages against the Individual Defendants to the extent permitted by law;

H. Reasonable attorney's fees and costs;

I. Pre- and post-judgment interest as permitted by law; and

J. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

David K. Sergi & Associates, P.C.
329 S Guadalupe Street
San Marcos, TX 78666
Phone: (512) 392-5010
Fax: (512) 392-5042
/s/ *David K. Sergi*___________
David K. Sergi
Texas Bar No. 18036000
david@sergilaw.com

/s/ *Wilma Giselle Mendez Pagan*
Wilma Giselle Mendez Pagan
Texas Bar No. 2410902
wilma@sergilaw.com
*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on October 20, 2026, a true and correct copy of this document was served on Defendant or their counsel of record via Electronic Case Filing sytem.

mrietvelt@tamus.edu

/s/ *David K. Sergi*___________

David K. Sergi

Texas Bar No. 18036000

david@sergilaw.com

/s/ *Wilma Giselle Mendez Pagan*___________

Wilma Giselle Mendez Pagan

Texas Bar No. 2410902

wilma@sergilaw.com

ATTORNEYS FOR PLAINTIFFS